**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-4099**

_____

UNITED STATES OF AMERICA,

> Plaintiff - Appellee,

> v.

JARON JAMES STARKEY,

> Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:24-cr-00058-HEH-1)

_____

Argued:  March 17, 2026                                    Decided:  May 22, 2026

_____

Before NIEMEYER, AGEE, and RICHARDSON, Circuit Judges.

_____

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Richardson joined.

_____

**ARGUED:**  Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  James Reed Sawyers, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Carolyn V. Grady, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Erik S. Siebert, United States Attorney, Angela Mastandrea, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

After pleading guilty to a federal drug-trafficking crime, Jaron Starkey was sentenced to 300 months' imprisonment. His sentence included a career-offender enhancement under U.S.S.G. § 4B1.1, which the district court applied based on Starkey's two prior felony drug-distribution convictions in 2012 and 2019 under Delaware law.

Starkey contends on appeal that the two Delaware convictions should not have qualified as predicate convictions because the offenses did not categorically qualify as "controlled substance offenses," as defined by the Sentencing Guidelines. *See* U.S.S.G. § 4B1.2(b) (2021). He argues that the Delaware drug-distribution statutes under which he was convicted — Del. Code Ann. tit. 16, § 4752(a) (2011), and § 4754(1) (2018) — included the conduct of *attempted* drug distribution and therefore did not qualify as controlled substance offenses under *United States v. Campbell*, 22 F.4th 438, 440 (4th Cir. 2022) (holding, prior to a 2023 Guidelines amendment, that "the Sentencing Guidelines' definition of a 'controlled substance offense' does not include" *attempted* drug-distribution offenses).

We conclude, however, that Starkey's argument is precluded first by the text of the applicable Delaware statutes. Starkey was convicted under § 4752 and § 4754, which punished "any person who manufactures, delivers, or possesses with intent to manufacture or deliver" illegal drugs. (Cleaned up). A separate Delaware statute criminalizes *attempts* to commit crimes. *See* Del. Code Ann. tit. 11, § 531. But Starkey was not convicted under the attempt statute.

2

Nonetheless, Starkey argues that the word "delivers," as was used in § 4752 and § 4754, includes attempts because the statute defines "deliver" or "delivery" to "mean[] the actual, constructive or *attempted transfer* from one person to another of a controlled substance, whether or not there is an agency relationship." Del. Code Ann. tit. 16, § 4701(9) (emphasis added). But even so, the definition of "deliver" does not broaden that element to include attempted delivery. Rather, a completed "delivery" — the essential element of the offense — includes "attempted transfers." We have repeatedly pointed this out in connection with the interpretation of several statutes similar to the Delaware statutes. *See United States v. Groves*, 65 F.4th 166, 171–74 (4th Cir. 2023) (federal drug-distribution statute); *United States v. Miller*, 75 F.4th 215, 229–31 (4th Cir. 2023) (North Carolina statute); *United States v. Davis*, 75 F.4th 428, 441–45 (4th Cir. 2023) (South Carolina statute); *United States v. Suncar*, 142 F.4th 259, 266–67 (4th Cir. 2025) (Pennsylvania statute); *United States v. Nelson*, 151 F.4th 577, 580–82 (4th Cir. 2025) (Virginia statute). In each of these cases, we explained that where the term "deliver" or "delivery" is defined to include "attempted transfers," the attempted transfer becomes a *completed* delivery, not an attempted delivery, because, in part, of the need not to render superfluous the separate statutes in each of those jurisdictions that criminalize attempt crimes. *See, e.g.*, *Nelson*, 151 F.4th at 581–82; *Suncar*, 142 F.4th at 266. At bottom, we have repeatedly held, as controls here, that an "attempted transfer" criminalized as a *completed* delivery is distinct from an *attempted* delivery and thus that these offenses prohibiting "delivery" of illegal drugs qualified as predicate offenses for the career-offender enhancement. *See Suncar*, 142 F.4th at 266. And we so conclude as to the applicable Delaware statutes.

3

To avoid this conclusion, Starkey argues that the Supreme Court of Delaware has nonetheless defined the delivery element of its statutes to include "attempted delivery," relying exclusively on *Bordley v. State*, 832 A.2d 1250, 2003 WL 22227558 (Del. Sept. 24, 2003) (unpublished). That case, however, presents a paradigmatic example of an "attempted transfer" being prosecuted as a *completed delivery* and thus hardly supports Starkey's argument. Specifically, *Bordley* involved a controlled purchase of drugs where a confidential informant working with the police called the defendant to "arrang[e] the purchase of $400 worth of crack cocaine." *Id.* at *1. The defendant agreed to the sale; instructed the informant to meet someone at a particular time and place; and then gave a coconspirator "a bag of crack cocaine to be delivered to [the informant]." *Id.* When the coconspirator went to the site, the police intervened after the money changed hands but before any "physical transfer of [the] crack cocaine took place." *Id.* On appeal, the defendant argued that "because there was no physical delivery of the crack cocaine to [the informant]," she should not have received an enhanced sentence imposed on the ground that the conviction was her "second . . . for delivery of a narcotic schedule II substance." *Id.* at *1–2. Rather, she argued that she was "only guilty of attempted cocaine delivery." *Id.* at *3. But the Delaware Supreme Court rejected that argument, noting that "the statutes at issue here . . . are unambiguous" and that "*a delivery expressly includes an attempted transfer*," such that the defendant had properly been convicted for delivery. *Id.* (emphasis added). The holding of *Bordley* thus provides no support for Starkey's argument that in Delaware, a defendant can be convicted for drug distribution based on a mere attempted delivery.

Seeking to avoid the *Bordley* holding, Starkey points to one line of dictum in the decision that appeared to equate "an attempted transfer" with an "attempted delivery." 832 A.2d 1250, at *3. But that line was not only dictum but was also a part of the trial judge's oral ruling from the bench, which the *Bordley* decision then excerpted in a long block quote. And in that block quote, the trial court got the statute right, although it appeared at one point to inconsistently equate an attempted transfer with an attempted delivery. This block quote from the trial court's statement, we conclude, is far too thin a reed on which to conclude that Delaware prosecutes actual inchoate, attempted deliveries under its drug-distribution statutes, rather than under its attempt statute.

Accordingly, we conclude that the district court correctly held that Starkey's prior Delaware drug-distribution convictions qualified as predicates for application of the Sentencing Guidelines' career-offender enhancement, and we therefore affirm the judgment of the district court.

AFFIRMED